# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 21-1997V

| | |
|---|---|
| ROBERT JACOBS, | Chief Special Master Corcoran |
| Petitioner, | |
| v. | Filed: July 17, 2025 |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Laura Levenberg*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Mary Eileen Holmes*, U.S. Department of Justice, Washington, DC, for Respondent.

### DECISION AWARDING DAMAGES[1]

On January 12, 2021, Robert Jacobs filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] ("Vaccine Act"). Petitioner alleged that he suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine received on September 13, 2020. Petition at 1. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters, and although entitlement was conceded in Petitioner's favor, the parties could not agree to damages, and their dispute was therefore submitted to resolution at an expedited proceeding on July 15, 2025.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

**For the following reasons, I find that Petitioner is entitled to damages in the form of a lump sum payment of $122,979.71 ($120,000.00 for past pain and suffering, and $2,979.71 for unreimbursed expenses).**

## I. Procedural History

The case was assigned to the SPU in April 2022. ECF No. 8. In June 2023, Respondent conceded entitlement in a Rule 4(c) Report. ECF No. 23. I issued a Ruling on Entitlement on June 7, 2023. ECF No. 24. Contemporaneous with the filing of the Rule 4(c) Report, Respondent indicated that the parties had been unsuccessful in their attempt to informally resolve the issue of damages. *See* ECF No. 25.

On June 7, 2023, I ordered the parties to brief their respective positions on the damages issue. *Id.* Petitioner filed his brief on July 24, 2023, Respondent filed his response brief on October 11, 2023, and Petitioner filed a reply on October 25, 2023. ECF Nos. 31 (Pet'r Br.), 33 (Resp't Br.), 34 (Pet'r Reply). On June 11, 2025, I set this matter for an expedited hearing on damages.

At the end of the July 15, 2025 expedited hearing, I issued an oral ruling from the bench on damages in this case. That ruling is set forth fully in the transcript from the hearing, which is yet to be filed on the case's docket (but is fully incorporated into this Decision).

## II. Authority

In another recent decision, I discussed at length the legal standard to be considered in determining SIRVA damages, taking into account prior compensation determinations within SPU. I fully adopt and hereby incorporate my prior discussion in Sections I and II of *Timberlake v. Sec'y of Health & Hum. Servs.*, No. 20-1905V, 2025 WL 721730 at *1-*3 (Fed. Cl. Spec. Mstr. Feb. 19, 2025).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and

suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.³

### III.   Appropriate Compensation for Petitioner's Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact his awareness of his injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

When performing the analysis in this case, I review the record as a whole to include the medical records, declarations, affidavits, and all other filed evidence, plus the parties' briefs and other pleadings. I consider prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience adjudicating these cases. However, I base my determination on the circumstances of this case.

Petitioner, a retired patent attorney, was 64 years old at the time of vaccination and in good health. Ex. 1 at 2; Ex. 13 at 2. Petitioner had previous heart, lung, and prostate issues, but no history of left shoulder injuries or symptoms. *See* Ex. 2 at 1-70. Petitioner also had a history of chronic lower back and neck pain related to moderate degenerative disk disease. *Id.* at 11, 13, 40, 50.

On September 13, 2020, Petitioner received the flu vaccine in his left arm. Petitioner had a telemedicine appointment with his primary care physician ("PCP") on October 7, 2020, and at that time complained of left shoulder pain and reduced range of motion since the vaccination. *Id.* at 55. His PCP prescribed a tapered course of oral prednisone and directed him to follow up if the pain persisted. *Id.* at 55-56.

On October 27, 2020, Petitioner saw an orthopedic surgeon, Dr. Steve Mirabello, and was diagnosed with left shoulder bursitis. Ex. 3 at 27-33. Dr. Mirabello gave Petitioner a cortisone steroid injection in his left shoulder and provided him with a home exercise program. *Id.*

At a follow-up with Dr. Mirabello on November 10, 2020, Petitioner reported improvement after the cortisone injection. Ex. 3 at 23-27. But at a telehealth appointment with his PCP on November 11, 2020, Petitioner stated that his shoulder pain continued despite the injection. Ex. 2 at 43.

---

³ *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

On December 8, 2020, Petitioner had a follow-up with Dr. Mirabello because he was still experiencing pain. Ex. 3 at 19-22. Petitioner had left shoulder tenderness and positive impingement signs. *Id.* at 22. Dr. Mirabello administered another cortisone injection and encouraged Petitioner to continue with the home exercise program. *Id.*

Petitioner returned to Dr. Mirabello on January 5, 2021, and complained that his pain had returned to previous levels after the cortisone injection wore off. Ex. 3 at 18. Dr. Mirabello referred him for an MRI. On February 3, 2021, Petitioner underwent an MRI of his left shoulder.[4] Ex. 4 at 5.

At an appointment with Dr. Mirabello on February 5, 2021 to discuss the MRI results, Petitioner was noted to have a left partial thickness rotator cuff tear, left shoulder pain, left shoulder impingement syndrome, left shoulder bursitis, and primary osteoarthritis of the left shoulder. Ex. 3 at 7-12. Dr. Mirabello gave Petitioner another cortisone injection and recommended that he undergo surgery. *Id.*

On April 21, 2021, Petitioner underwent arthroscopic surgery of his left shoulder with manipulation under anesthesia, capsular release, and debridement of labrum and rotator cuff. Ex. 5 at 30-31. At a post-operative appointment on April 23, 2021, Dr. Mirabello noted that Petitioner was healing well and referred him to physical therapy ("PT"). Ex. 10 at 7. Petitioner had ten PT sessions through May 14, 2021. *Id.* at 45-61. He was discharged with a home exercise program. *Id.*

On May 18, 2021, Petitioner had an appointment with Dr. Mirabello and reported that his arm had improved but still felt sore sometimes. Ex. 6 at 6-9. Dr. Mirabello encouraged petitioner to continue with his home exercises but did not feel the need for any further follow-up. *Id.*

On July 12, 2023, Petitioner filed a supplemental declaration describing how he was affected by pain in his left shoulder from the vaccination through the completion of PT. Ex. 13 at 1-3. Petitioner stated that even after PT, he has had "lingering pain" in his shoulder, but that it was "not severe enough" for him to seek further medical treatment. *Id.* at 3. He further stated that this pain was intermittent and associated with attempting to exercise and sleeping on his left side. *Id.* Petitioner reported that he has "learned to live with the pain" and now performed less exercise. *Id.* Petitioner also reported taking more ibuprofen and sleep medication to help him deal with the pain. *Id.*

---

[4] The MRI revealed "supraspinatus tendinosis with possible superimposed partial tearing along the undersurface of the tendon as well as distally at the insertion point into the humeral head, regularity of the superior glenoid labrum at the biceps labral anchor seen only on inversion recovery imaging. Possibly reflecting a superior glenoid labral degeneration or developing SLAP tear." Ex. 4 at 5.

On June 11, 2024, over three years since he had completed PT, Petitioner returned to Dr. Mirabello to follow up on ongoing left shoulder pain that had "increased over the past few weeks." Ex. 16 at 1. Dr. Mirabello took an x-ray and noted the "excellent" previous acromioplasty and normal glenohumeral joint. *Id.* Dr. Mirabello believed that Petitioner was developing a frozen shoulder. *Id.* Dr. Mirabello administered a cortisone injection and referred Petitioner to PT. *Id.*

At his initial PT session on June 12, 2024, Petitioner reported that he had gradual worsening of left shoulder pain and disfunction that started on May 22, 2024. Ex. 18 at 7. Petitioner did not recall any specific mechanism of injury, but had been moving furniture at home. *Id.* Petitioner attended six PT sessions between June 12, 2024 and July 5, 2024. *See* Ex. 18 at 1-7; Ex. 19 at 1-3.

As explained at the July 15, 2025 hearing (and in many prior cases), awarding an amount for pain and suffering is an art and not a science. The parties should look to the general landscape of past pain and suffering awards, and specific past reasoned decisions that they believe to be directly "on point," when presenting their specific valuations of a case that is formally in damages. That information, when offered by the parties, can be highly useful in guiding my award (although a petitioner's personal circumstances are always the foundation of the award ultimately issued).

In his brief, Petitioner argues that his past pain and suffering warrants an award of $160,000.00, based on comparison to the prior reasoned decisions of *Blanco* and *Wilson*.[5] Pet'r Brief at 5-8; Pet'r Reply Br. at 1-2. In *Blanco*, the petitioner received $135,000, and in *Wilson*, the petitioner received $130,000. Petitioner argues that his course of treatment and length of ongoing sequelae were more severe than in *Blanco* and *Wilson.* Pet'r Br. at 7-8. Petitioner also contends that I should apply a rate of inflation to similar past damages awards when making my award in this case. *Id.* at 8-9.

Respondent distinguishes *Blanco* and *Wilson* and instead relies upon four cases: *Wylie* ($108,000.00), *Richardson* ($112,000.00), *Issertell* ($112,500.00), and *Kestner* ($115,000.00).[6] Resp't Br. at 7-8, Appx. A and B. Respondent emphasizes that Petitioner

---

[5] *Blanco v. Sec'y of Health & Hum. Servs.*, No. 18-1361V, 2020 WL 4523473 (Fed. Cl. Spec. Mstr. July 6, 2020); *Wilson v. Sec'y of Health & Hum. Servs.*, No. 19-0035V, 2021 WL 1530731 (Fed. Cl. Spec. Mstr. Mar. 18, 2021).

[6] *Wylie v. Sec'y of Health & Hum. Servs.*, No. 20-1314V, 2022 WL 17968929 (Fed. Cl. Spec. Mstr. Dec. 7, 2022); *Richardson v. Sec'y of Health & Hum. Servs.*, No. 20-0674V, 2023 WL 6180813 (Fed. Cl. Spec. Mstr. Aug. 16, 2023); *Issertell v. Sec'y of Health & Hum. Servs.*, No. 20-0099V, 2022 WL 2288247 (Fed. Cl. Spec. Mstr. May 17, 2022); *Kestner v. Sec'y of Health & Hum. Servs.*, No. 20-0025V, 2023 WL 2447499, at *1 (Fed. Cl. Spec. Mstr. Mar. 10, 2023)

had a relatively short duration of formal treatment, completed less physical therapy than in the comparable cases, and had a full recovery following surgery. *Id.* at 8.

Petitioner's argument that his case is more severe than what the petitioners experienced in *Wilson* and *Blanco* is not well-founded. Although Petitioner did receive more steroid injections than the *Wilson* petitioner, he also had fewer PT sessions. Similarly, Petitioner received the same number of steroid injections but much fewer PT sessions than the *Blanco* petitioner. Petitioner's declaration and records demonstrate that he had some lingering pain after his April 2021 surgery and had a short course of follow-on PT three years later, but he did not suffer from significant symptoms for as long as the petitioners in *Blanco* and *Wilson.* In both cases, the petitioners endured more lengthy treatment before even undergoing surgery. The initial course of treatment in *Blanco* lasted more than two years and in *Wilson* for about one year. I therefore do not find any reason to award Petitioner above $130,000 for past pain and suffering.

The four cases cited by Respondent are useful comparators, from a factual standpoint. They present moderate SIRVAs with similar durations in formal treatment, and involved a single, successful surgery. The specific combination of treatment that Petitioner received does not match any of Respondent's cases identically – for example, Petitioner received more steroid injections. On the other hand, the petitioners in these four cases received more PT than Petitioner, including pre-surgery PT, which Petitioner did not attempt. In light of Petitioner's persistent, though admittedly mild pain, as in *Kestner*, I find that an award in the range of *Kestner* would be appropriate. And contrary to Respondent's argument, I do not find these facts suitable for an award lower than the $108,000 *Wylie* award.

Although neither party discussed the *Dobbins* decision, awarding $125,000.00 in past pain and suffering, I find it to be a good comparable as well.[7] Similar to the instant case, the *Dobbins* petitioner had a relatively brief duration of active treatment of seven to eight months. However, she had severe limitations to her range of motion, necessitating a cortisone shot, surgery, and extensive PT post-surgery. She also suffered the personal impact of needing to care for her critically ill mother while undergoing treatment. *Dobbins* further demonstrates that Petitioner's damages should be in a similar amount.

Overall, based on my review of the cases raised by the parties, as well as *Dobbins*, I find it appropriate here to award $120,000.00 for past pain and suffering.[8]

---

[7] *Dobbins v. Sec'y of Health & Hum. Servs.*, No. 16-0854V, 2018 WL 4611267 (Fed. Cl. Spec. Mstr. Aug. 15, 2018).

[8] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to

6

I will not, however, adjust this $120,000.00 for inflation. The argument to do so is not based upon any statutory language in the Vaccine Act. Petitioner instead relies on the broader idea of "generosity" within the Vaccine Program. *See* Pet'r Reply at 3-4. But that concept comes into play in more indirect ways, or in the Act's preponderance standard. Moreover, although Petitioner suggests that considering inflation when calculating pain and suffering awards is a well-established practice within the Vaccine Program, the authorities cited by Petitioner are not on point. Petitioner first quotes a Ninth Circuit case from 1956 stating that it is "well-settled that inflation may be taken into account when comparing past damages awards with similar losses." Pet'r Br. at 8 (quoting *Cox v. Remillard*, 237 F.2d 909, 913 (9th Cir. 1956)). However, in addition to being non-binding, *Cox* simply states that a court *may* make this adjustment -- not that it must do so.

Petitioner also cites a recent decision, *Skinner-Smith,* as "precedent" for considering inflation in the Vaccine Program. *Id.* (citing *Skinner-Smith* v. *Sec'y of Health & Hum. Servs.,* No. 14-1212V, 2023 WL 3043904, at *3 (Fed. Cl. Spec. Mstr. Apr. 21, 2023)). This decision is of course not precedential (since special masters do not bind each other in their individual rulings and determinations) -- but it also does not support Petitioner's argument. There, an inflation rate was not applied to the amounts awarded in previous pain and suffering cases to determine how much to grant the petitioner in *Skinner-Smith.* Rather, it noted that Respondent, citing older cases, had characterized a proffer of $10,000.00 to be "extremely generous," but that the age of such decisions supported an upward revision to adjust for inflation. *See Skinner-Smith*, 2023 WL 3043904, at *3, n.4. But ultimately, a literal inflation adjustment was not used in determining the specific amount awarded.

In general, previous decisions have not been in favor of the concept of adjusting Vaccine Act damages for inflation. In particular, the Federal Circuit determined that the estate of a deceased minor petitioner cannot recover future lost earnings, noting that even if the $250,000.00 death benefit may no longer be an appropriate amount, adjusting this amount for inflation or otherwise was a matter for Congress. *See Tembenis v. Sec'y of Health & Hum. Servs.,* 733 F.3d 1190, 1192, 1198-99 (Fed. Cir. 2013). The same principle would apply to the cap on pain and suffering awards.

The Court of Federal Claims has also rejected a petitioner's argument that the pain and suffering award should be adjusted for inflation. *See Jane Doe *34 v. Sec'y of Health & Hum. Servs.,* 87 Fed. Cl. 758, 768 n.9 (2009). The Court stated, in a footnote, that

---

net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

neither the statute nor the special master's authority allowed for such an adjustment. *Id.* This argument was again rejected recently. *See Bossenbroek* v. *Sec'y of Health & Hum. Servs.,* 169 Fed. Cl. 418, 435 (2024).[9]

It has also not been the practice of the special masters to consider inflation in making pain and suffering awards.[10] In *Hocraffer*, former Chief Special Master Golkiewicz rejected a similar argument and stated that making an adjustment for inflation would intrude into Congress's role of adjusting the statutory cap to account for any inflationary erosion. *See* No. 99-533V, 2007 WL 914914, at *6 (Fed. Cl. Feb. 28, 2007). Further, in discussing the difficulty of reducing an award for future pain and suffering to net present value, special masters have noted that "there is no scientific or mathematical way to derive a 'net discount rate,' since there is no such thing as an expected inflation rate" with respect to "pain and suffering." *Childers v. Sec'y of Health & Hum. Servs.,* No. 96-194V, 1999 WL 159844, at *1 (Fed. Cl. Mar. 5, 1999); *see also  Long v. Sec'y of Health & Hum. Servs.*, No. 94-310V, 1995 WL 470286, at *13 (Fed. Cl. July 24, 1995); *Stotts v. Sec'y of Health & Hum. Servs.*, No. 89-108V, 1990 WL 300674, at *5 (Cl. Ct. June 3, 1990).

Petitioner's request for inflation to be factored into his pain and suffering award is thus without sufficient legal basis. I otherwise, however, accept the more general principle that special masters could consider the decreased value of money over time when reviewing the amounts awarded in older decisions. This is consistent with the standard, holistic effort to reach a fair amount of compensation for a Petitioner's pain and suffering, not a formulaic procedure.

## Conclusion

For the foregoing reasons and based on consideration of the entire record, **Petitioner is awarded a lump sum payment of $122,979.71 ($120,000.00 for past pain and suffering, and $2,979.71 for unreimbursed expenses) to be paid through an ACH deposit to petitioner's counsel's IOLTA account for prompt disbursement.**

---

[9] *Bossenbroek* did indicate that it could be arbitrary and capricious for a special master "to directly tie a damages calculation to an award in a comparable case made several years in the past, without adjusting the prior award for inflation." 169 Fed. Cl. 418, 435 (2024). However, I do not base the damages award in this case directly on any particular award. As stated above, my decision is based on the specific circumstances of this case, considering the record as a whole, the parties' briefs and other pleadings, prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and my experience as an adjudicator.

[10] Inflation is taken into account by OSM in determining yearly attorney's fee ranges and rates – but that exercise serves a wholly different purpose (ensuring that attorneys receive current market-consistent rates for their work), is performed annually, and is not otherwise comparable to the subjective valuations that are performed when assessing pain and suffering. In addition, the question of inflation is not inherent in every case where pain and suffering is to be awarded; not every case, for example, would require consideration of pain and suffering awards from years prior.

This amount represents compensation for all damages that would be available under 42 U.S.C. § 300aa-15(a).

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[11]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[11] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.